IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE RESIDENCE LOCATED AT 103 S LINCOLN ST, APT 1, KEENE, NH, AND A BLACK, FORD TAURUS [NH 3386505] | Case No. 20-mj-31-01-AJ<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS

I,          being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

2.      I am a federal law enforcement officer of the United States within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), duly authorized to conduct investigations of and make arrests for violations of United States Code.

3.      The probable cause set forth in this affidavit is based upon my personal knowledge and observations, experience and training, as well as through information derived from investigators of the Keene, NH Police Department (PD), the Manchester, NH PD, NH State Police, multiple FBI Offices, cooperating individuals, database queries, extensive review of open source information, as well as physical and electronic surveillance, and other methods.

4.      Since the affidavit is being submitted for the limited purpose of establishing that probable cause exists to support the issuance of a search warrant, I have not included details about every aspect of the investigation.  While this affidavit contains all the material information I am aware of that is pertinent to the requested search warrants, it does not set forth all of my knowledge about this matter.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Christopher Cantwell transmitted extortionate and threatening communications in violation of Title 18 U.S.C. § 875.  There is also probable cause to search the locations described in Attachments A-1 and A-2 for evidence of these crimes, as described in Attachments B-1 and B-2.

## PROBABLE CAUSE

### *Background*

6.      Christopher Cantwell ("Cantwell") resides at 103 South Lincoln St in Keene, NH. He has an active NH driver's license reflecting the same address.  A black, 2013 Ford Taurus bearing NH license plate 3386505 is registered in Cantwell's name at the same address as well.

7.      Cantwell has a criminal history that includes misdemeanor convictions for criminal trespass, criminal possession of stolen property, criminal possession of a firearm / weapon, negligent driving, and public intoxication, as well as multiple convictions for speeding and driving while intoxicated.  Cantwell has not been convicted of a felony. Cantwell was also charged with Dangerous Gas: Malicious Release Cause Injury and Assault: Unlawful Injury by Acid/Explosive/Fire for actions committed in Charlottesville, Va. in 2017, but eventually pleaded guilty to misdemeanor Assault & Battery and was banned from the state of Virginia for five years.

### _Investigation_

8.      Christopher Charles Cantwell is an openly self-proclaimed Neo-Nazi and member of the Alt-Right Movement.  He gained notoriety for his involvement as a participant and featured speaker during the Unite the Right rally in Charlottesville, VA in August 2017. Afterwards, Cantwell was featured prominently in two HBO Vice News Tonight documentaries about the rally, its participants, and the aftermath.  Cantwell received considerable public attention for a video he uploaded shortly after the rally in which he wept while sharing knowledge of a warrant for his arrest.  Cantwell has since been widely referred to and ridiculed as "The Crying Nazi."

9.      Cantwell has previously run multiple websites and hosted multiple podcasts / webcast shows focused on white nationalism.  He became well known to many supporters as well as many with opposing views.  Among those previously claiming to be like-minded was a group of individuals known by various online pseudonyms, collectively referred to as the "Bowl Patrol", who became online associates of Cantwell in late 2017 or early 2018.

10.     Cantwell previously conveyed to the FBI that members of the Bowl Patrol reached out to him while he was incarcerated in Virginia following the Charlottesville event. Various members showed him support and sought guidance in establishing an online platform. Cantwell embraced the alliance and at some point even provided access credentials for some of his websites or accounts to select members, including the group's leader, an online user known as "Vic Mackey". Bowl Patrol members openly admire Dylann Roof, who was convicted of federal hate crimes for killing nine people during a 2015 massacre at a historically black church in Charleston, SC. Roof subsequently became the first federal hate crime defendant to be sentenced to death. Roof became widely recognized by his distinct haircut, known as a "Bowlcut", which has become synonymous with the Bowl Patrol and Roof in many online forums.

11.     Cantwell explained that he and the Bowl Patrol began to suffer a fundamental divide following the mass shooting at a Pittsburgh synagogue committed by Robert Bowers in October 2018. Cantwell claimed that since he did not offer the same support for the incident as the Bowl Patrol did, members began ridiculing and harassing him. The alleged harassment included website defacement and posts via fake online and social media accounts pretending to come from Cantwell. Multiple members of the Bowl Patrol, including "Mosin Nagant" and "Cheddar Mane," admitted to prank-calling Cantwell's "Radical Agenda" show. Cantwell also believed they were responsible for distributed denial-of-service (DDoS) attacks against his websites and for robo-calling his shows, congesting the phone lines with spoofed, un-attributable numbers. Cantwell warned Bowl Patrol members via various online forums to cease such activity and that he had reported the matter to law enforcement.

12.     In February 2019, Cantwell filed a sworn complaint stating that his website, ChristopherCantwell.com, was "defaced with terrorist propaganda and pornography" the previous night, including with "pro Robert Bowers material and bestiality." Cantwell gave two IP addresses of the suspected culprits, and indicated that a "WordPress login" had occurred. He said the attack was carried out by members of the Bowl Patrol. He named Vic Mackey (the acknowledged leader of the Bowl Patrol) and Mosin Nagant as the offenders. According to Cantwell, "Vic had an author's account on my website some time back when he was allowed to contribute content. His permission to do so had since been rescinded, but his account remained active." Cantwell stated that the Bowl Patrol "has been responsible for constant spam and harassment of me and my communications channels for months, ever since I distanced myself from the group in the wake of the Pittsburgh synagogue shooting." "I am interested in pursuing criminal charges if at all possible."

13.     On or around March 5, 2019, Cantwell doxed, or released identifying information, for a Bowl Patrol member using the online alias "Mosin Nagant".

14.     On 5/23/19, FBI personnel observed a black, plastic Otterbox container, as depicted in Attachment A-2, affixed beneath the trunk area, to the underside exterior of the black Ford Taurus bearing license plate [NH 3386505], registered to and operated by Cantwell, while it was parked in a public area. Cantwell has been observed by FBI personnel on multiple other occasions, both before and after this instance, accessing or emplacing the same, or others similar to, black plastic container in the same vicinity beneath the rear trunk area of his vehicle. Such activity occurred as recently as 1/19/20. Based on my experience, such a container, while compact, is of sufficient size to conceal digital storage media, narcotics, small weapons or other sensitive items.

15.     On or around July 11, 2019, FBI personnel became aware of an extortion threat made by Cantwell via the "Telegram" secure social messaging platform.  In the exchange, which occurred on June 15-16, 2019, Cantwell threatened to rape the wife of another individual.  The individual, known by the online alias as "Cheddar Mane", aka "Cheddar Man" ("CM"), is a known member of Bowl Patrol.  As part of the extortion threat, Cantwell (CC) threatened to harm CM's family unless he provided identifying information for the Bowl Patrol's known leader, "Vic Mackey".  Screen captures of the exchange were obtained from open sources, as shown below:

June 15, 2019

CC:     I guess you forgot the lesson which kept you away for a short while.  Do you need to be reminded?

[CM's HOME ADDRESS]

CM:     What are you talking about

Some fag pretends to be you

What do you even stand to gain here

Let's think about this.  Every time someone you think is in BP talks shit about you – a public figure – you threaten to dox me?  Say you did.  What then?

I honestly don't know what I even did.

I followed a link into a group I didn't even know you were in.

June 16, 2019

CC:     Get a fucking life or I will ruin the one you have.

Don't bother anyone, then you won't have to worry about crossing me.

CM:     I haven't given you any thought and it was an honest mistake.  Didn't even know you were in there or I'd have thought better of it.  Other than that, all I can do is just leave you the fuck alone and tell other people to do the same – which I have done.

Seriously man I couldn't care less about what you are trying to do these days.

CC:     You're a fucking liar.  You came here with your loser fucking pals because you have the attention span of a nigger and the morals of a kike, and because of that fact, you are going to lose everything you have

Next time I post that photo, the faces won't be blurred, and then you're going to start getting unexpected visitors

And I don't care if it's you causing the trouble, you're the one who's gonna suffer cause you're the one who I can get

If you wanna dox Vic, he's a better target, but if you give me fake info, then your wife is gonna have trouble sleeping at night until she leaves you and takes your kids away

CM:     What picture are you even talking snout

About

CC:     Fuck around and I'll remind you the hard way

CM:     So I am assuming peach took the picture.  Guess that means you don't care what happens to her either

CC:     As a matter of fact, I don't.  So if you don't want me to come and fuck your wife in front of your kids, then you should make yourself scarce

Give me Vic, it's your only out

I guess I'm going to have to prove my seriousness

CM:     Show me the picture you have

CC:     No

[PHOTO OF CM's WIFE & CHILDREN]

More where that came from.

I bet one of my incel listeners would love to give her another baby.

You think the FBI would take issue with an LSD user owning guns around kids?

[PHOTO OF CM WITH STRIPS ON TONGUE]

Give me Vic

CM:     I don't own guns or do drugs

CC:     Lol

OK I guess you're not going to give me what I want

Fine.  Good luck

CM:    I don't even have his dox

CC:    Guess you're fucked then

Alright, since you're obviously not understanding the severity of this, I'll do you a favor.

On Tuesday I'm going to send every episode of BowlCast along with your identifying information to whatever the local equivalent of CPS is in your jurisdiction.

This way the information won't be public, yet.

On Tuesday you should be able to talk to your wife and kids and get them to all have their stories straight.  get anything incriminating out of the house.

But I'm pretty sure once that visit comes, you'll understand that this is serious.

If that doesn't work, I'll escalate until I get what I want.

Tell Vic that if he gives himself up, he can save your family

He won't do it, but at least then you'll know for certain that you chose the wrong side

CM:    Lol you're such a fucking nobody Chris.  Do your worst you crazy junkie loser.  Go boof some meth up your asshole you faggot ass kike

16.    On 7/17/19, Cantwell emailed the FBI in Bedford, NH, regarding harassment from the "Bowl Patrol."  He claimed to have been victimized via his websites, servers, and phone services used in support of his podcast shows, Radical Agenda and Outlaw Conservative. Previous attempts were made by FBI personnel to discuss the matter via telephone and in person, but Cantwell insisted on recording any such conversations.  Cantwell instead elected to continue to communicate with the FBI via email, so he could create records of all proceedings.  Over the following months, Cantwell emailed the FBI dozens of times, providing voluminous information, which he claimed supported the harassment allegations.

17.    On 8/28/19, Cantwell provided to the FBI unmasked, digital images of CM's family and "Cheddar Man" himself.  The images were the same images shared during the message exchange between Cantwell and CM on 6/15/19 – 6/16/19.  Cantwell also provided a

screen capture displaying the home address of "Cheddar Man", which was also provided during the same referenced message exchange.

18. On 9/17/19, Cantwell was interviewed by FBI personnel. Cantwell explained that he had asked "Cheddar" for "Mackey's" info and threatened to dox him and call Child Protective Services (CPS) if he did not provide it. (CM and his wife live in a different state and are the parents of three small children.) According to Cantwell, other individuals claimed to Cantwell that this was extortion. Cantwell stated, "I believe you are already aware of this exchange" and "I don't think I need to say anything else about that, but I guess I just did." At the time he confronted "Cheddar", Cantwell felt he did not have protection from law enforcement and that he had to take action himself. Cantwell indicated that after the corresponding exchange with "Cheddar", he deleted the chat and called CPS the next day.

19. Cantwell also provided the name and phone number of another supposed victim of harassment from the Bowl Patrol, who also could corroborate his complaint. KF was a former romantic interest of Cantwell who provided Cantwell with the home address and family photos of "Cheddar Man". KF was a former associate of multiple Bowl Patrol members, including "Cheddar Man" and "Hardmaus". KF was known by the online moniker, "Peach". Cantwell advised FBI personnel that KF was aware of his communications with the FBI, and that she would be willing to speak with investigators to substantiate Cantwell's claims.

20. During the same interview, Cantwell told investigators he retained some screen shots concerning "Mosin Nagant" from Gab. Cantwell subsequently emailed related digital images to the FBI on 9/18/19. Cantwell also described PN, aka "UnclePaul1488", as a well-known affiliate of Bowl Patrol who was often referred to online as "Uncle Paul". Cantwell retained email records of Telegram abuse he reported which included PN's email address.

According to Cantwell, PN had his own Telegram Channel which he used to egg on the Bowl Patrol and other would-be violent actors.

21.     Late on 10/8/19, Cantwell was observed by FBI personnel in Maryland walking back and forth from the residence he often shared with his known girlfriend, ID, and his Ford Taurus.  Cantwell and ID were known to stay together at a residence located at

    Arnold, MD.  At the time, Cantwell was observed multiple times carrying many items, including a black box, multiple bags and backpacks, a possible PC, a computer tower, a suitcase, a large white plastic bag, and other miscellaneous items.  Cantwell subsequently departed Maryland and returned to New Hampshire with the previously listed items.

22.     In October 2019, "Cheddar Mane" (CM) and his wife were interviewed by FBI personnel.  Both said that they took Cantwell's threat seriously and were afraid for their family's safety.  CM verified that the threatening communication occurred during a message exchange via the Telegram application.  CM reiterated he took the threat very seriously, and he had taken measures to protect his family.  He deleted his Telegram account following the threat and removed his Facebook account.  He also attempted to remove his personal data from a number of websites.  CM was typically armed and usually had a gun within reach.  He also purchased a camera to see who came and left his driveway.  CM also indicated he had retained screen shots of the threatening message exchange with Cantwell for his own records, and that after the threats he had circulated screen shots of the threats on-line.

23.     On 10/24/19, Cantwell was interviewed again by FBI personnel and was shown an email he previously sent to the FBI.  The email contained a paragraph that begins with, "The CPS thing was a guy who goes by the name of Cheddar Mane.", as well as other excerpts including, "I threatened to expose his identify if he continued harassing and defaming me." and

Page 11 redacted for the following reason:
- - - - - - - - - - - - - - - - - - -

"Hardmaus" and that's how he got the information for "Cheddar Man". Throughout the call KF expressed her reluctance to cooperate with law enforcement, even in order to corroborate harassment claims by Cantwell against members of Bowl Patrol.

26. On 1/6/20, Cantwell returned from a brief stay in Maryland to his known residence in Keene, NH, as observed by FBI personnel. The following morning, he was observed unloading his vehicle taking multiple items into the residence. Items removed from Cantwell's vehicle included tripods, at least one computer, monitors, a keyboard box, garments, a printer, a projector or fan, a toolbox, a drill, a camera bag, backpacks, duffel bags, a black storage bin, and Amazon and USPS priority cardboard boxes.

27. Previous open source research revealed an Amazon.com Wish List for Chris Cantwell. The list featured a photo of Cantwell recognizable from the previously referenced, original VICE News documentary about Charlottesville. This wish list was observed to contain various forms of digital storage media such as portable hard drives and USB storage drives (thumb drives), as well as a wireless (Wi-Fi) router, recording equipment, and other miscellaneous items. Cantwell has referred to this list often during multiple episodes of his podcast / webcast shows, as he encourages followers to support him by purchasing items.

28. Cantwell has posted numerous articles between his multiple websites regarding privacy, tradecraft, and operational security (OPSEC). He emphasizes use of the Dark Web and TOR (The Onion Router), virtual private networks (VPNs), secure email, secure operating systems, Russia-based software, encrypted communication applications, tax avoidance, and use of cryptocurrency. Cantwell has also posted information on tracking and search tools used both to aid in online anonymity as well as to research sensitive, personal information about adversaries in order to "dox" them, or broadcast their private or identifiable information online.

29.     Cantwell has typed recent statements to law enforcement further demonstrating habits of creating digital records and archiving digital information as well as acknowledgement of potential wrongdoings:

> "I'd be interested in providing you with a USB drive containing video and other information from my legal problems in the Commonwealth of Virginia… I'd be shocked to find such doubts did not exist within the KPD, given some of the ridiculous things that I've said and done over the years."
>
> "I'm typically in compliance with the law."

30.     Investigative research has not revealed any physical location of employment for Cantwell.  In addition, he has not been observed traveling to or from any known work location with any adherence to a regular schedule.  All accounts provided by Cantwell indicate he is self-employed and relies on donations and financial support from others.  Cantwell is also believed to record his online podcasts / webcast shows from his residence.  This includes periods of time in 2019 when Cantwell stayed in Maryland with his known girlfriend, and indicated at the beginning of his regular shows that he was recording in Maryland.

31.     During the course of this investigation, no other vehicles of similar resemblance to the black Ford Taurus [NH 3386505] have been observed at or in the vicinity of 103 S Lincoln St in Keene, NH, the location of Cantwell's known residence.  Cantwell was the only individual observed accessing or driving [NH 3386505] during the same timeframe.

32.     Based on my training and experience as a federal law enforcement agent and as a previous digital forensic examiner, as well as that of many colleagues involved in this investigation, combined with the totality of the circumstances and extensive evidence revealed during the course of this investigation, there is probable cause to believe Christopher Cantwell

has been involved in making threats of violence via interstate communications. Probable cause also exists to believe Cantwell has attempted to undermine and manipulate efforts by law enforcement to detect or prevent related criminal activity, as demonstrated by his limited cooperation with federal law enforcement, which occurred only after he transmitted threatening communications to his victims, and after he was told by others he may have criminal culpability as a result. Cantwell also indicated he kept minimal records of direct communications with members of Bowl Patrol, although he has demonstrated routine desire to record phone conversations and to thoroughly document other activities. Cantwell also has demonstrated significant acumen and advanced knowledge of tactics and techniques to avoid detection by law enforcement in order to hide his true actions and any potential co-conspirators. Recently, Cantwell has also been observed physically relocating computer equipment between multiple states, which potentially contains evidence of the aforementioned violations. Research indicates the Telegram messaging application can be used on a variety of platforms including mobile phones, as well as directly from web browsers on desktop or laptop computers. Accordingly, probable cause exists that Cantwell transmitted, or stored records of, threatening communications via a combination of devices. Moreover, the combination of these facts also supports the existence of probable cause that Cantwell has previously and continues to use hidden containers as depicted in Attachment A-2 to conceal potential evidence.

## CONCLUSION

33.     Based on the aforementioned related facts, I submit that this Affidavit supports probable cause for a warrant to search the residence located at 103 S Lincoln St, Apt 1, Keene, NH, and the black Ford Taurus [NH 3386505], as described in Attachments A-1 and A-2, respectively, and to seize items described in Attachments B-1 and B-2, believed to be evidence

of the offenses committed by Cantwell.

34.     I hereby swear under oath that the information set forth in this Affidavit is true and correct to the best of my knowledge, information, and belief.

Subscribed and sworn to before me on January 21, 2020, at Concord, New Hampshire.

  /s/ Andrea K. Johnstone
Honorable Andrea K.  Johnstone
United States Magistrate Judge
District of New Hampshire

# ATTACHMENT A-1

## Property to Be Searched

The property to be searched is 103 S Lincoln St, Apt 1, Keene, NH 03431, identified as the residence of Christopher Cantwell. The primary structure is a two-story, off white, multi-unit building with no shutters and a dark roof, as well as a side driveway and parking area accessible from S Lincoln St. Christopher Cantwell's residence is known to be Apt 1, which encompasses the entire first floor of the structure. The residence is accessed by an exterior door accessible from the porch on the driveway side of the house. The driveway is accessible from S Lincoln St, immediately across the street from the playground of the Monadnock Waldorf School.

Also to be searched on the property is a common storage area in the basement which is accessible by all tenants, including Cantwell.











**Property to Be Searched**

The property to be searched is a black Ford Taurus bearing license plate [NH 3386505].

The vehicle is registered to and typically operated by Christopher Cantwell. The vehicle is usually

parked at Cantwell's known residence, as described above, located at 103 S Lincoln St, Keene,

NH. Cantwell has been observed to use hidden storage compartments in and around the vehicle

as depicted below:













# ATTACHMENT B-1

## Particular Items to be Seized

1.      All records relating to violations of Section 875 of Title 18, those violations involving Christopher C. Cantwell and occurring after October 2018, including:

   a.   Records and information relating to interstate threats or extortion against "Cheddar Mane," CM's family, or persons associated with the Bowl Patrol;

   b.   Records and information relating to Cantwell's communications with Child and Protective Services regarding Cheddar Mane and his family;

   c.   Records and information, including photographs, relating to Cheddar Mane, his family, and his location and residence;

   d.   Records and information relating to Cantwell's disputes with and antipathy for Cheddar Man, Vic Mackay, and other members of the Bowl Patrol;

   e.   Records and information relating to Cantwell's use of and control over a Telegram messaging account;

   f.   Records and information relating to the destruction of evidence of the crimes described above; and

   g.   Records and information relating to the identity or location of Cantwell and the victim.

2.      Computers or storage media used as a means to commit the violations described above.

3.      For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a.   evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.   evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.   evidence of the lack of such malicious software;

d.   evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.   evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f.   evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m. contextual information necessary to understand the evidence described in this attachment.

4. Routers, modems, and network equipment used to connect computers to the Internet.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing

or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

# ATTACHMENT B-2

## Particular Items to be Seized

1.      All records relating to violations of Section 875 of Title 18, those violations involving Christopher C. Cantwell and occurring after October 2018, including:

    a.   Records and information relating to interstate threats or extortion against "Cheddar Mane," CM's family, or persons associated with the Bowl Patrol;

    b.   Records and information relating to Cantwell's communications with Child and Protective Services regarding Cheddar Mane and his family;

    c.   Records and information, including photographs, relating to Cheddar Mane, his family, and his location and residence;

    d.   Records and information relating to Cantwell's disputes with and antipathy for Cheddar Man, Vic Mackay, and other members of the Bowl Patrol;

    e.   Records and information relating to Cantwell's use of and control over a Telegram messaging account;

    f.   Records and information relating to the destruction of evidence of the crimes described above; and

    g.   Records and information relating to the identity or location of Cantwell and the victim.

2.      Computers or storage media used as a means to commit the violations described above.

3.      For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m. contextual information necessary to understand the evidence described in this attachment.

4. Routers, modems, and network equipment used to connect computers to the Internet.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing

or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.